# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-20265

United States Court of Appeals
Fifth Circuit
**FILED**
June 13, 2014
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

                        Plaintiff-Appellant

v.

ASHLEY NICOLE RICHARDS; BRENT JUSTICE,

                        Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, HAYNES, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

The First Amendment restrains government to "make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Speech, as expression, "arcs toward the place where meaning may lie,"[1] and when that meaning is hurtful or dislikable—meaningful, perhaps, to the bigot, or the flag burner—courts must be vigilant to affirm First Amendment protection. *See Snyder v. Phelps*, 131 S. Ct. 1207, 1219 (2011); *Texas v. Johnson*, 491 U.S. 397, 404–405 (1989). Yet when hurtful expression involves violence,[2] and dislikable

---

[1] Toni Morrison, Nobel Lecture (Dec. 7, 1993), in Nobel Lectures, Literature 1991-1995 (Sture Allén ed., 1997).

[2] *See Virginia v. Black*, 538 U.S. 343, 362–63 (2003); *Watts v. United States*, 394 U.S. 705, 707–08 (1969); *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616–17 & nn.24–25 (5th Cir. 2004).

expression involves obscenity,[3] First Amendment doctrine acknowledges also the truth that language is "a living thing over which one has control, . . . an act with consequences."[4]

In 2010, the Supreme Court struck down Congressional legislation, codified at 18 U.S.C. § 48 (1999), which made it a crime to knowingly create, sell, or possess "a depiction of animal cruelty," declaring the statute to be overbroad under the First Amendment. *United States v. Stevens*, 559 U.S. 460 (2010). Responsively, Congress revised § 48 to make it a crime to knowingly create, sell, market, advertise, exchange, or distribute an "animal crush video" that (1) depicts actual conduct in which one or more non-human animals is intentionally crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury and (2) is obscene. 18 U.S.C. § 48 (2010).

Thereafter, Defendants-Appellees Ashley Nicole Richards and Brent Justice were charged with, *inter alia*, four counts of creating and one count of distributing animal crush videos. In these videos, Richards is the person "performing," while Justice is the person behind the camera. Generally, the videos portray Richards binding animals (a kitten, a puppy, and a rooster), sticking the heels of her shoes into them, chopping off their limbs with a cleaver, removing their innards, ripping off their heads, and urinating on them. Richards is scantily clad and talks to both the animals and the camera, making panting noises and using phrases such as "you like that?" and "now that's how you fu** a pussy real good."

Richards and Justice were charged in Texas court with felony cruelty to animals. *Texas v. Justice*, Harris County, Cause No. 1357897 (2012); *Texas v. Richards*, Harris County, Cause Nos. 1357859, 1357860 (2012). A subsequent

---

[3] *See Miller v. California*, 413 U.S. 15, 24 (1973); *United States v. Ragsdale*, 426 F.3d 765, 779–81 (5th Cir. 2005).

[4] Morrison, *supra* note 1.

federal indictment charged Richards and Justice with (1) four counts of creation and one count of distribution of animal crush videos, in violation of 18 U.S.C. § 48; (2) one count of engaging in the business of selling or transferring obscene matter, in violation of 18 U.S.C. § 1466(a); and (3) one count of production and transportation of obscene matters for sale or distribution, in violation of 18 U.S.C. § 1465.

Richards and Justice filed a motion to dismiss the federal indictment on the ground that § 48 is facially invalid under the First Amendment. The district court dismissed counts one through five, concluding that § 48 is facially invalid because it proscribes speech that is not within an unprotected category—specifically the speech is neither obscene nor incidental to criminal conduct—and is not narrowly tailored to serve a compelling government interest. The government timely appealed, arguing that on its face § 48 proscribes only unprotected speech and is not overbroad. For the reasons that follow, we REVERSE and REMAND.

I.

In *Stevens*, 559 U.S. at 482, the Court was clear that it did not take measure of a statute limited to crush videos or other depictions of extreme animal cruelty, but instead held that § 48, as then written, was substantially overbroad. As noted, Congress promptly revised and narrowed the statute to read as it has been applied against Richards and Justice. In that present form, the statute reads, in full:

> (a) Definition.—In this section the term "animal crush video" means any photograph, motion-picture film, video or digital recording, or electronic image that—
>> (1) depicts actual conduct in which 1 or more living non-human mammals, birds, reptiles, or amphibians is intentionally crushed, burned, drowned, suffocated, impaled, or otherwise subjected to

serious bodily injury (as defined in section 1365[5] and including conduct that, if committed against a person and in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242;[6] and
  (2) is obscene
(b) Prohibitions.—
  (1) Creation of animal crush videos.—It shall be unlawful for any person to knowingly create an animal crush video, if—
    (A) the person intends or has reason to know that the animal crush video will be distributed in, or using a means or facility of, interstate or foreign commerce; or
    (B) the animal crush video is distributed in, or using a means or facility of, interstate or foreign commerce.
  (2) Distribution of animal crush videos.—It shall be unlawful for any person to knowingly sell, market, advertise, exchange, or distribute an animal crush video in, or using a means or facility of, interstate or foreign commerce.
(c) Extraterritorial application.—Subsection (b) shall apply to the knowing sale, marketing, advertising, exchange, distribution, or creation of an animal crush video outside of the United States, if—
  (1) the person engaging in such conduct intends or has reason to know that the animal crush video will be transported into the United States or its territories or possessions; or
  (2) the animal crush video is transported in the United States or its territories or possessions.
(d) Penalty.—Any person who violates subsection (b) shall be fined under this title, imprisoned for not more than 7 years, or both.
(e) Exceptions.—
  (1) In general.—This section shall not apply with regard to any visual depiction of—
    (A) customary or normal veterinary or agricultural husbandry practices;
    (B) the slaughter of animals for food; or
    (C) hunting, trapping, or fishing.

---

[5] 18 U.S.C. § 1365 defines "serious bodily injury" as "bodily injury which involves—(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. § 1365(h)(3).

[6] 18 U.S.C. § 2241 criminalizes aggravated sexual abuse, and 18 U.S.C. § 2242 criminalizes sexual abuse, both of which require causing another to engage in a sexual act. Thus, by referencing these two sections, § 48 proscribes bestiality.

(2) Good-faith distribution.—This section shall not apply to the good-faith distribution of an animal crush video to—
(A) a law enforcement agency; or
(B) a third party for the sole purpose of analysis to determine if referral to a law enforcement agency is appropriate.
(f) No preemption.—Nothing in this section shall be construed to preempt the law of any State or local subdivision thereof to protect animals.

18 U.S.C. § 48 (2010).

## II.

"This court reviews constitutional challenges to federal statutes de novo." *In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 603 (5th Cir. 2013) (citing *United States v. Pierson*, 139 F.3d 501, 503 (5th Cir. 1998)). "To succeed in a typical facial attack [a plaintiff must] establish that no set of circumstances exists under which [the statute] would be valid, or that the statute lacks any plainly legitimate sweep." *Stevens*, 559 U.S. at 473 (internal quotation marks and citations omitted). "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Stevens*, 559 U.S. at 468 (internal quotation marks and citation omitted). "[H]owever, the First Amendment has permitted restrictions upon the content of speech in a few limited areas," including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *Id.*

The government argues first that § 48 is facially constitutional because it is limited by its terms to speech that is obscene. The Supreme Court established its enduring test for obscenity in *Miller v. California*, 413 U.S. 15, 24 (1973). "The basic guidelines for the trier of fact must be: (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken

as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* (internal quotation marks and citations omitted).

Animal crush videos, to fall within § 48, must be "obscene." 18 U.S.C. § 48(a)(2). Although the statute does not define the term obscene, the Supreme Court has made clear that:

> We do have a duty to authoritatively construe federal statutes where a serious doubt of constitutionality is raised and a construction of the statute is fairly possible by which the question may be avoided. If and when such a serious doubt is raised as to the vagueness of the words obscene, lewd, lascivious, filthy, indecent, or immoral as used to describe regulated material in [federal statutes], we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific hard core sexual conduct given as examples in *Miller v. California.*

*United States v. 12 200-Ft. Reels of Super 8MM. Film*, 413 U.S. 123, 130 & n.7 (1973) (internal quotation marks and citations omitted). Following that instruction, the Court, this circuit, and other circuits have held that federal statutes that use but do not define the word "obscene" incorporate the *Miller* definition. *See Ashcroft v. ACLU*, 535 U.S. 564, 581 n.11 (2002) ("Although nowhere mentioned in the relevant statutory text, this Court has held that the *Miller* test defines regulated speech for purposes of federal obscenity statutes such as 47 U.S.C. § 223(b).") (citing *Smith v. United States*, 431 U.S. 291, 299 (1977)); *Hamling v. United States*, 418 U.S. 87, 105 (1974) (construing federal statute that criminalizes the mailing of "obscene" matter to incorporate the *Miller* definition); *United States v. Rudzavice*, 586 F.3d 310, 314–15 (5th Cir. 2009) (upholding federal statute that prohibits the interstate transfer of "obscene matter" to someone under 16, reasoning that courts construe "obscene" to be consistent with *Miller*) (citing *Reeves v. McConn*, 638 F.2d 762, 763–64 (5th Cir. Mar. 1981)); *see also United States v. Dean*, 635 F.3d 1200, 1205 & n.4 (11th Cir. 2011) (noting that section of federal statute that

criminalized only material that "is obscene" would satisfy all three *Miller* prongs); *United States v. Schales*, 546 F.3d 965, 971–72 (9th Cir. 2008) (upholding federal statute that required material to depict a minor engaging in sexually explicit conduct and be obscene, reasoning that "obscene" requires that the government satisfy *Miller*).

Where one construction of a statute would raise "serious constitutional doubts," it is "incumbent upon [courts] to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Acknowledging this principle, Richards and Justice nonetheless argue that the legislative history shows that Congress intended to write its own definition of obscenity into § 48. The district court looked to the Findings section of the Act and the House Report to conclude similarly that Congress intended a definition of obscenity that excludes the *Miller* "sexual conduct" requirement. The district court relied on *Brown v. Entertainment Merchants Ass'n*, 131 S. Ct. 2729, 2742 (2011), where the Supreme Court held that a California law that prohibited the sale or rental of violent video games to minors was a content-based speech restriction and failed strict scrutiny. Because "violence is not part of the obscenity that the Constitution permits to be regulated," the Court found that the games did not fall within the obscenity exception. *Id.* at 2735.

In *Brown*, however, the statute included a definition of the proscribable material that mimicked the *Miller* language but left out the "sexual conduct" requirement. *See Brown*, 131 S. Ct. at 2732–33. Here, by contrast, § 48 simply uses the word "obscene." Moreover, the legislative history is, unsurprisingly for a deliberative body, variable, hence debatable. On the one hand, the Findings state that "many animal videos are obscene in the sense that the depictions, taken as a whole—(A) appeal to the prurient interest in sex; (B) are patently offensive; and (C) lack serious literary, artistic, political or scientific

7

value." Pub. L. No. 111-294, 124 Stat. 3177, § 2(6)(A)–(C) (2010). The House Report states that "witnesses concurred that Congress can ban interstate and foreign commerce in depictions of acts of illegal animal cruelty that appeal to the prurient interest, are patently offensive, and lack serious literary, artistic, political or scientific value." H.R. Rep. No. 111-549, at 5 (2010). On the other hand, the Findings also reference the fact that the Supreme Court has long held obscenity to be an unprotected category of speech and the fact that certain depictions of animals cruelty appeal to a "specific sexual fetish." *Id.* at § 2(4) & (5). Additionally, Senator Leahy stated that "in response to the *Stevens* decision, the House overwhelmingly passed a narrower bill banning animal crush videos on obscenity grounds" and that "[i]n drafting the substitute amendment to the House bill, [the Senate was] careful to respect the role that courts and juries play in determining obscenity. In any event, it will be up to the prosecutor to prove and the jury to determine whether a given depiction is obscene, because obscenity is a separate element of the crime." 156 Cong. Rec. S7653 (2010). Furthermore, the House Report notes that "witnesses also agreed that crush videos could be constitutionally prohibited in line with the obscenity doctrine formulated by the Supreme Court in *Miller v. California*." H.R. Rep. No. 111-549, at 5 (2010). The Report notes also that courts have applied *Miller* to sadomasochism and that "[a]lthough obscenity may generally apply to materials that depict or describe a more obviously sexual act, case law shows that obscenity can also cover unusual deviant acts." *Id.* at 5 & n.13. The Report cites to *Hamling* for the proposition that "*Miller* and its progeny firmly established the term 'obscene' as a legal term of art." *Id.* at 5 & n.11. Finally, written testimony submitted to the Senate Judiciary Committee indicates that Congress considered this issue. *See Prohibiting Obscene Animal Crush Videos in the Wake of United States v. Stevens: Hearing Before the S. Comm. on the Judiciary*, 111th Cong. 24–25 (2010) (statement of J. Scott Ballenger, Partner,

Latham & Watkins LLP) ("H.R. 5566 does not spell out the full constitutional standard for obscenity under *Miller* . . . . But neither do the rest of the federal obscenity statutes; they all simply use the word 'obscene,' and the Supreme Court has repeatedly held that criminal statutes using that word will be understood as incorporating the necessary constitutional limitations.").

These few examples suffice to instruct us not to look to variable and debatable legislative history to render unconstitutional a statute that incorporates a legal term of art with distinct constitutional meaning. *See Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1266 (2011) ("Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous text. We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language."); *United States v. Pruett*, 681 F.3d 232, 242 (5th Cir. 2012) ("[C]ourts applying criminal laws must generally follow the plain and unambiguous meaning of the statutory language, and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language.") (internal quotation marks and citation omitted). "It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975)). We hold that § 48 incorporates *Miller* obscenity and thus by its terms proscribes only unprotected speech.

## III.

Richards and Justice argue, as they did in district court, that even if § 48 is limited to *Miller* obscenity, it nonetheless is facially unconstitutional because it violates the rationale set forth in *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992).[7] There, the Supreme Court struck down a city ordinance that proscribed fighting words that insulted or provoked violence based on race, color, creed, religion, or gender. *See id.* at 381. The Court held that, although the ordinance was limited to fighting words, it applied only to fighting words that addressed "one of the specified disfavored topics." *Id.* at 391. Thus, the ordinance was "facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses." *Id.* at 381.[8] Richards and Justice correspondingly argue that § 48 violates the First Amendment because it proscribes only a narrow category of obscenity based on its content—the causation of serious bodily injury to an animal.

The Court in *R.A.V.* articulated several exceptions to its rationale. First, "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable, no significant danger of idea or viewpoint discrimination exists. . . . A State might choose to prohibit only that obscenity which is the most patently offensive in its prurience—i.e., that which involves the most lascivious displays of sexual activity." *R.A.V.*, 505

---

[7] Richards and Justice have not challenged the statute as overbroad. Indeed, during oral argument they disavowed any claim of substantial overbreadth. *See Stevens*, 559 U.S. at 473; *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 615 (1973) ("[T]he overbreadth of a statute must not only be real, but substantial as well.").

[8] *Compare R.A.V.*, 505 U.S. at 401 (White, J., concurring in the judgment) ("It is inconsistent to hold that the government may proscribe an entire category of speech because the content of that speech is evil, but that the government may not treat a subset of that category differently without violating the First Amendment; the content of the subset is by definition worthless and undeserving of constitutional protection."), *with id.* at 387 ("[T]he First Amendment imposes not an 'underinclusiveness' limitation but a 'content discrimination' limitation upon a State's prohibition of proscribable speech.").

U.S. at 388. Second, "[a]nother valid basis for according differential treatment to even a content-defined subclass of proscribable speech is that the subclass happens to be associated with particular secondary effects of the speech, so that the regulation is justified without reference to the content of the . . . speech." *Id.* at 389 (citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)). "A State could, for example, permit all obscene live performances except those involving minors." *Id.* Third, "[t]o validate such selectivity (where totally proscribable speech is at issue) it may not even be necessary to identify any particular 'neutral' basis, so long as the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." *Id.* at 390.

Section 48 regulates a content-defined subclass based on its secondary effects and is justified without reference to the content of the speech. *See id.* at 385. "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal citations omitted). The plain language and the history and revisions of § 48 suggest that there is no realistic possibility that official suppression of ideas is afoot. *See R.A.V.*, 505 U.S. at 390. Nevertheless, even assuming, for the sake of argument, that the creators and distributors of animal crush videos, like Richards and Justice, intend to advance a distinct message, perhaps about barbarism, § 48 is justified with reference not to the content of such a message but rather to its secondary effects—wanton torture and killing that, as demonstrated by federal and state animal-cruelty laws, society has deemed worthy of criminal sanction. *See* 156 Cong. Rec. S7653-54

(2010) ("The other element that occurs in animal crush videos and which warrants a higher punishment than simple obscenity is that it involves the intentional torture or pain to a living animal. Congress finds this combination deplorable and worthy of special punishment.").[9]

The appropriate inquiry for a regulation that targets the secondary effects of speech is whether it "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *See Renton*, 475 U.S. at 50 (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Cases have reiterated that the government has a significant interest in combatting secondary effects such as public health, safety and welfare; societal debasement; the promotion of violence; and other serious criminal activity. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 296–98 (2000); *Fantasy Ranch Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 561 (5th Cir. 2006). Furthermore, the Court has explained, even in the context of compelling-interest analysis, that a long history and substantial consensus, as seen in state and federal legislation, are indicative. *See New York v. Ferber*, 458 U.S. 747, 757–58 (1982); *Burson v. Freeman*, 504 U.S. 191, 211 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 119 (1991). Most states had passed some form of anticruelty laws by the end of the 19th century. *See* Margit Livingston, *Desecrating the Ark: Animal*

---

[9] Under this secondary-effects theory, § 48 also is justified with reference to the harm that the underlying animal cruelty causes. *See* Elena Kagan, *Regulation of Hate Speech and Pornography After R.A.V.*, 60 U. Chi. L. Rev. 873, 891 (1993) (citing *Ferber* and arguing that, in the wake of *R.A.V.*, "the Constitution may well permit direct regulation of speech, if phrased in a viewpoint-neutral manner, when the regulation responds to a non-speech related interest in controlling conduct involved in the materials' manufacture" and that "it would appear the government may prohibit directly the dissemination of any materials whose manufacture involved coercion of, or violence against, participants"); *see also* Frederick Schauer, *Harm(s) and the First Amendment*, 2011 Sup. Ct. Rev. 81, 103–104 (2009); John Tehranian, *Sanitizing Cyberspace: Obscenity, Miller, and the Future of Public Discourse on the Internet*, 11 J. Intell. Prop. L. 1, 6 (2003).

that Congress has a significant interest in preventing the secondary effects of animal crush videos, which promote and require violence and criminal activity.

Furthermore, § 48 serves that interest in a reasonably tailored way. Section 48(a)(1) no longer includes the words "wounded" and "killed," which troubled the Court in *Stevens* because they might not imply cruelty and could apply to depictions of activities such as hunting. *See* 18 U.S.C. § 48(a)(1); *Stevens*, 559 U.S. at 474–75. Going further, § 48(e)(1) excepts depictions of customary or normal veterinary or agricultural husbandry practices; the slaughter of animals for food; or hunting, trapping, or fishing. 18 U.S.C. § 48(e)(1). Most importantly, as described earlier, by requiring proof of obscenity, § 48(a)(2) limits § 48(a)(1), which describes the proscribed acts of cruelty. *See id.* at (a)(2); H.R. Rep. No. 111-549, at 10 (2010) (noting that § 48 excludes depictions of activities such as hunting "even though the plain sweep of the statute does not cover these activities"). Section 48 thus is narrow and tailored to target unprotected speech that requires the wanton torture and killing of animals. *See Wisconsin v. Mitchell*, 508 U.S. 476, 487–88 (1993); *see also Connection Distrib. Co. v. Holder*, 557 F.3d 321, 328–30 (6th Cir. 2009) (en banc); *Valley Broad. Co v. United States*, 107 F.3d 1328, 1331 n.3 (9th Cir. 1997). We hold that § 48 is a permissible regulation of a subset of proscribable speech.[12]

## IV.

We hold that on its face § 48 is limited to unprotected obscenity and therefore is facially constitutional. We REVERSE the district court's judgment and REMAND for proceedings consistent with this opinion.

---

[12] We do not reach the government's alternative argument that § 48 is facially constitutional because it proscribes only speech that is incidental to criminal conduct under the reasoning of *New York v. Ferber*, 458 U.S. 747, 749 (1982).